UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRY WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10CV877TIA |
| ) | |
| MICHAEL ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.     Procedural History**

Claimant Terry Watson filed an application for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 112-19).[1] Claimant states that his disability began on April 29, 1999, as a result of depression, hypertension, problems knees, back problems, right wrist injury, diabetes, both ankles injured, bad allergies, hernias, and bursitis. (Tr. 9, 51, 143, 499). On initial consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 51-55). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 56). On May 14, 2009, a hearing was held before an ALJ. (Tr. 24-45). Claimant testified and was represented by counsel. (Id.). Thereafter, on July 29, 2009, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 6-16). After considering the contentions raised in the

---

[1]"Tr." refers to the page of the administrative record filed by the Defendant with its Answer (Docket No. 13/filed August 2, 2010).

attorney brief dated September 30, 2009, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision on March 11, 2010. (Tr. 1-5, 192-93). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.     Evidence Before the ALJ

### A. Hearing on May 14, 2009

#### 1. Claimant's Testimony

At the hearing on May 14, 2009, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 24-44). At the time of the hearing, Claimant was forty-nine years of age. (Tr. 28). Claimant stands at six feet and weighs 238 pounds. (Tr. 28). Claimant testified that he receives a disability pension and his disability rating is 100% for the last nine years. (Tr. 29). Claimant testified that his disability rating was 70% starting in 1993-94. Claimant earned a GED. (Tr. 29). Claimant lives in a house with his wife. (Tr. 28). Claimant served in the Army for thirteen years and was a Sergeant at the time of his honorable discharge on February 14, 1992. (Tr. 30).

Claimant testified that he last worked as a senior mail processor for the post office after being discharged from the Army. (Tr. 30). Claimant worked in that capacity for eighteen months, but his health started to interfere with his job performance. (Tr. 31). His job duties included lifting mail trays weighing twenty-five pounds. (Tr. 32). Claimant resigned from the job, because he was unable to make it to work and did not want his work record to be messed up. (Tr. 43-44). Claimant admitted to having received letters from his employer regarding his absenteeism. (Tr. 44). Claimant worked for a trash service company in Georgia for three weeks.

(Tr. 31). Claimant left the job because of the pain in his wrist, back, ankles, and knees precluded him from physically doing the job. (Tr. 31).

Claimant testified that he does not have a driver's license, and he does not get out. (Tr. 33). Claimant allowed his license to expire after receiving a letter of suspension. (Tr. 43). Either his sister or sister-in-law drives him. (Tr. 33). Claimant testified that his medications cause nausea, dizziness, and constant indigestion. (Tr. 33). Claimant testified that he experiences constant back pain and rated his pain around an eight or nine. (Tr. 33-34). Claimant takes Motrin to make the pain tolerable. (Tr. 34). Claimant testified that his knee pain comes and goes and rated his pain at a seven. (Tr. 34-35). Claimant requested to stand for a minute due to his back pain flaring up, and the ALJ permitted his request. (Tr. 35). Claimant testified that he can sit for ten minutes but then he has to get up. (Tr. 36). Claimant has to sit after walking one block because of the pain in his feet and legs. Claimant testified that he cannot lift and carry much because of the three hernias he has, and he has an appointment to see a doctor to reschedule his surgery. (Tr. 36). Claimant testified that he has problems bending over and crouching down. (Tr. 37).

Claimant receives care from Dr. Kroupa, his primary care physician, for his depression at the VA and takes nortriptyline as treatment. (Tr. 37). Claimant testified that the side effects of his medications include dizziness, headaches, blurred vision, sometimes confusion, vomiting, weakness, drowsiness, and muscle cramps. (Tr. 38).

As to his daily activities, Claimant goes to sleep around 8:30, but he wakes up throughout the night. (Tr. 38-39). Claimant takes a couple of naps during the day. (Tr. 39). Claimant testified that he can take care of his own personal needs like getting dressed and taking a

shower. (Tr. 40). Claimant testified that he spends most of his day trying to sleep and trying to position himself to avoid pain. (Tr. 41). Claimant testified that he has trouble paying attention and his short-term memory is bad. (Tr. 41). Claimant testified that he has problems with crowds, and he does not like being around a lot of people. (Tr. 42). Claimant testified that he stopped using alcohol and street drugs some years ago. (Tr. 42).

### 2. Forms Completed by Claimant

In the Disability Report - Field Office, the interviewer noted that Claimant did not appear to be in any pain during the forty-five minute interview, but he reported being dizzy at the end and not having eaten anything that day. (Tr. 174-77).

### 3. Explanation of Determination

In the Explanation of Determination, the disability examiner found:

> Clmt is a 47 yo male with a GED. Clmt is alleging disability due to depression, hbp, problems knees/back, right wrist injury, DM, ankles injured, bad allergies, and hernias. This is a DIB only case with a DLI in the past, 9/30/2000. A PRTF was prepared and was found insufficient. Additionally, there is insufficient evidence prior to the DLI regarding physical allegations. This claim is denied for insufficient evidence.

(Tr. 49).

### III. Medical Records

From May 18 through May 28, 1993, Claimant was hospitalized at the Veteran's Administration for treatment of cocaine abuse. (Tr. 401). Dr. Robert Anderson, the treating physician, noted Claimant's mental status at the time of admission to be somewhat irritable with moderately depressed mood. (Tr. 401). Claimant requested a pass to attend the funeral of an in-law, but he failed to return until several days later during which time he had already been

discharged irregular. (Tr. 401-02).

In the discharge summary dated October 24, 1995, Dr. George Viamontes, the attending physician, noted that Claimant had been admitted through the emergency room on October 4, 1995, for inpatient treatment for alcohol abuse, cocaine dependence, and polysubstance abuse. (Tr. 399). During his stay, Claimant requested a pass to attend some business, but he was advised not to go based on his previous history of leaving on pass and not returning. (Tr. 400).

In the Psychiatry Note dated April 29, 1999, Dr. Mohinder Partap noted last treating Claimant as inpatient for alcohol and cocaine dependence in 1996. (Tr. 496). Claimant reported having a 70% service-connected disability for his back, depression, and ankle. Claimant reported being paranoid. (Tr. 496). Claimant denied any cocaine abuse and reported not drinking for two years. (Tr. 497). Claimant indicated that he cannot stand to be around people, because he becomes paranoid. Claimant admitted to beating unknown people in the park four months earlier and blaming them for laughing at him. Claimant stated that he "[g]ot in trouble with ex-wife because she looked to turning against her and beat her up." (Tr. 497). Dr. Partap diagnosed Claimant with psychosis and assessed his GAF to be 45. (Tr. 497). In a follow-up visit on May 26, 1999, Claimant reported feeling better, but being afraid to leave his house and not being able to stay in the waiting room. (Tr. 496). Claimant reported hearing noises and thinking people are talking about him. Dr. Partap increased his olanzapine dosage as treatment. (Tr. 496). Although instructed to return in two months for follow-up treatment, he failed to return until January 11, 2000, when he returned requesting medication refills. (Tr. 351-53).[2]

---

[2]In a Medicine Telephone Contact dated October 25, 1999, the following entry is made:

> PT missed appt last week - requests refills. Appointment rescheduled. PT
> complains of possible hernia in groin. Advised to come as walk-in prior to appt if

- 5 -

On April 21, 2000, Claimant returned for treatment after having called requesting a follow-up visit to assess his hernia as he missed his previous appointment for hernia repair. (Tr. 491). Claimant reported experiencing more anxiety after having been attacked outside his home. (Tr. 492). Claimant indicated that he would be leaving town for a couple of months, and he did not want to stay for lab draw. (Tr. 492). Claimant received treatment for an acute respiratory infection and psychosis. (Tr. 351). Dr. Partap continued Claimant's medication regimen. (Tr. 492).

During a general examination on March 19, 2003, Dr. Tanneemul Haque noted that Claimant had been treated for depression and dysthymic reaction while on active duty and since that time, he has been treated for psychiatric problems from time to time with various labels. (Tr. 509).

In the Psychiatric Review Technique completed on August 21, 2007, Dr. Ricardo Moreno, PhD, found there to be insufficient evidence to evaluate Claimant inasmuch as there was no medical evidence prior to the date of last insured, September 30, 2000. (Tr. 355-65).

In a Progress Note dated December 23, 2008, Claimant returned for a blood pressure check after recent dose increase. (Tr. 446). Dr. Laura Kroupa noted that an additional assessment for depression indicated that Claimant does not meet criteria for major depressive disorder, and he has not symptoms that require additional intervention. (Tr. 446-47).

**IV.    The ALJ's Decision**

The ALJ found that Claimant last met the insured status requirements of the Social

---

concerned.
Meds refilled for pick up.

(Tr. 353).

Security Act on September 30, 2000.  (Tr. 11).  The Claimant has not engaged in substantial gainful activity since April 29, 1999, the alleged onset date of disability, through the date of last insured, September 30, 2000.  The ALJ found that through the date of last insured, the medical evidence establishes that Claimant did not have an impairments or combination of impairments that significantly limited the ability to perform basic work-related activities for twelve consecutive months and, therefore, Claimant did not have a severe impairment or combination of impairments.  (Tr. 11).  The ALJ concluded that Claimant is not under a disability at any time from April 29, 1999, the alleged amended onset date, through September 30, 2000, the date last insured.  (Tr. 15).

**V.     Discussion**

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an

ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for disability benefits.  20 C.F.R. § 404. 1520(b).  If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant is not found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling.  If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled.  20 C.F.R. § 404.1520(d).  If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work.  If the claimant can still perform past work, she is not disabled.  20 C.F.R. § 404.1520(e).  If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy.  In step five, the ALJ must consider the claimant's "age, education, and past work experience."  Only if a claimant is found incapable of performing other work in the national economy will she be found disabled.  20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

   Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole."  Pearsall, 274 F.3d at 1217.  Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  Id.  The court's review

"is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730

(quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)).  When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision.  Id.  The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730.  Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000).  See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred by not finding Claimant to have a severe impairment and to be credible.

A.          Severity of Claimant's Impairments

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred by not finding Claimant to have a severe impairment.

In his application for disability benefits, Claimant alleged disability due depression, hypertension, problems knees, back problems, right wrist injury, diabetes, both ankles injured, bad allergies, hernias, and bursitis. The ALJ found Claimant has no impairment or combination of impairments that significantly limited his ability to perform basic work activities.  The Social

Security regulations define a nonsevere impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b). In finding Claimant's impairments not to be severe impairments, the ALJ based his determination predominantly on his finding that Claimant's subjective allegations were not credible and his impairments were controlled by medication. The ALJ noted that although Dr. Partap diagnosed Claimant with psychosis and assessed his GAF to be 45 on April 29, 1999, in the follow-up visit, Claimant reported improvement albeit continued complaints of hearing voices and people talking about him. Although instructed to return in two months, Claimant failed to return for treatment until January 2000 when he received treatment for an acute respiratory infection. The ALJ also considered the gaps in medical treatment showing Claimant's impairments not to be severe. The ALJ noted how the medical evidence established he next received treatment in April 2000 for allergy problems and anxiety. The ALJ further noted how the doctor continued to prescribe the same type and dosage of psychotropic medications thereby suggesting his symptoms to be controlled by medication. Accordingly, the ALJ determined that the impairments did not have more than a minimal impact upon the Claimant's ability to engage in basic work-related activities such that it did not satisfy 20 C.F.R. §§ 404.1521 and 404.921.

The record shows that the ALJ did consider the nature of Claimant's impairments in

reaching his decision. The ALJ noted how some of Claimant's allegations pre-date his alleged onset date of disability and never prevented Claimant from working. The record shows that when Claimant's impairments are treated, either by medication or some milder form of conservative treatment measure, the impairments respond and abate. At the hearing, Claimant testified that he resigned from his position as a mail processor to avoid being terminated for absenteeism. The ALJ noted that prior to the date of last insured, Claimant's abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have never been significantly impaired on any documented long-term basis. The ALJ further noted based on his observation of Claimant at the hearing that Claimant displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance. The Court finds Claimant's contention that the ALJ erred in failing to find his impairments to be severe impairments and to determine their effect on his limitations to be without merit.

The ALJ next noted that the treatment gaps in the medical record undermine Claimant's credibility concerning his allegations of disabling pain and disabling impairments. Edwards v. Barnhart, 314 F.3d 964, 968 (8th Cir. 2003) (claimant's failure to pursue regular medical treatment detracted from credibility). Such gaps suggest that Claimant's subjective complaints of disabling pain are not entirely credible. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995) (citing Benskin v. Bowen, 830 F.2d 878, 884) (8th Cir. 1987) (holding that the "claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider in rejecting a claimant's subjective complaints of pain). "[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); see Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 1994) (holding

that infrequent treatment is a basis for discounting subjective complaints).  After receiving treatment on April 29, 1999, Claimant returned in a follow-up visit reporting improvement but thereafter failing to return as scheduled two months later.  See Shannon v. Chater, 54. F.3d 484, 486 (8th Cir. 1995) ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem.").  Seeking limited medical treatment is inconsistent with claims of disabling pain.  Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991).  Claimant next returned for treatment in January 2000 for an acute respiratory infection.  In this matter, the record does not establish that Claimant did not seek medical treatment because of limited resources.

The ALJ further noted that no treating or examining doctor had found Claimant to be disabled or totally incapacitated or ordered any work limitations.  The ALJ also noted that the medical records do not show any doctor placing Claimant on any specific long-term limitations on his ability to stand, sit, walk, bend, lift, carry or do other basic exertional activities.  The ALJ found Claimant's activities of daily living provide further support of his credibility determination.  In particular, the ALJ opined that any restrictions were by Claimant's choice, not by any apparent medical proscription.  See Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (an ALJ may discredit claimant based upon statements that conflict with other record evidence).

The ALJ considered the medical record and the diagnoses by all the treating physicians and explained why he was crediting the diagnosis of some of the doctors and not crediting the diagnosis of other doctors.  Based on the objective medical evidence, the ALJ  determined Claimant's impairments not to be severe impairments, and the undersigned finds that substantial evidence supports the ALJ's determination.  The undersigned notes that where there are conflicts

- 13 -

in the evidence, the resolution of such conflicts is for the Commissioner, and not the Court, to make. Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000); Beasley v. Califano, 608 F.2d 1162, 1166 (8th Cir. 1979). This is so even when the medical evidence is in conflict. Cantrell, 231 F.3d at 1107; Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)("Where the medical evidence is equally balanced, ... the ALJ resolves the conflict."). "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted).

      Nonetheless, the ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints of constant pain were not credible. The credibility of Claimant's subjective complaints is especially important. Specifically, the ALJ noted that no treating physician stated that Claimant was disabled or unable to work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on his daily activities, or functional or physical limitations. The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of

her testimony and of her complaints).  Likewise, the ALJ noted that Claimant received conservative medical treatment.  See Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)(lack of ongoing treatment is inconsistent with complaints of disabling condition).  The medical record is devoid of any evidence showing that Claimant's condition had deteriorated or precluded him from working in the past.  See Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) (claimant not considered disabled when claimant worked with an impairment over a period of years absent significant deterioration).  Indeed, for the remainder of the relevant period, through the date of last insured September 30, 2000, Claimant sought no further psychiatric treatment or services.

      The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility.  See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, the courts normally defer to his credibility determination).  The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole.  Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility.  Those included Claimant's minimal treatment for pain, his lack of work restrictions by any physicians, his gap in medical treatment, his infrequent, and conservative medical treatment.  The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination.  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).

The substantial evidence on the record as a whole supports the ALJ's decision. See Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's testimony at the hearing, the absence of objective medical evidence of deterioration, the absence of any doctor finding Claimant disabled or imposing any functional limitations, his failure to seek regular and sustained treatment, medical noncompliance, and his ability to work until March 2003 when he was laid off from his job. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

                                              /s/ Terry I. Adelman
                                           UNITED STATES MAGISTRATE JUDGE

Dated this    7th   day of September, 2011.